John M. Keane, S.
The mime expresses his ideas and evokes laughter or tears without language. A tourist in a foreign land often has the role of a mime thrust upon him because he does not know the language. A gesture or a nod frequently gives clear meaning to language otherwise ambiguous. Once death quiets a person, he can make no gestures to clarify the language left behind.
So Sam S. Bianco can make no gesture now that would aid the court in the interpretation of his will. While confined to the hospital after a heart attack, he discussed a will with a hospital employee. On November 26, 1963, the employee presented a small letter-sized sheet of paper typed as follows:
November 26, 1963
I, sam s. bianco, Trim Street, Kirkwood, New York, Being of sound mind do hereby make this my last will and testament, revoking all other wills that may be presented prior to the above date.
I request that all my funeral expenses be paid and all my medical and hospital bills be also paid.
I Bequeath, after expenses, all my Property and Possesions, both Personal and Real Estate to by brother and true sisters, share and share alike. So help me Grod.
Signed this:—
26th Day of November, 1963
Sam. S. Bianco
Witnessed:—
Leroy T. James
Ethel B Parker
Sam S. Bianco died three days later on November 29, 1963. After examination of the subscribing witnesses who were two hospital employees, the will was duly admitted to probate by this court on July 10, 1964. Since the will named no executor, letters of administration, e. t. a. were issued the same day to the petitioner.
The crux of the matter concerns the meaning of “ true sisters ”.
Sam S. Bianco was a widower. He was survived by a brother and four sisters of the whole blood and three sisters of the half blood. Although no testimony was given, a memorandum of facts and law was submitted by the petitioner (a sister of the whole blood). No objection was made on behalf of the sisters of the half blood concerning the facts therein.
*130 Decedent was 37 years old when the first child of his father’s second marriage was born. There was lack of friendship between decedent and his half sisters during the lifetime of his father. After the death of decedent’s father, the breach in their relations was widened because the father gave his property to the children of the second marriage, all of whom were infants, to the exclusion of the adult children of his first marriage. Apparently decedent and his three half sisters never visited each other.
With this background, we turn again to the words ‘ ‘ true sisters ”. The Legislature has determined that under intestacy, “Relatives of the half-blood shall take equally with those of the whole blood in the same degree ” (Decedent Estate Law, § 83, subd. 12). Here decedent made a will so that he would die testate. Since it was written by one untrained in the discipline of the law, its meaning must be judged accordingly.
This court determines that in view of the facts that existed, decedent by use of the phrase “ true sisters ”, meant to include only his sisters of the whole blood, and further, in doing so that he wished to exclude the three sisters of the half blood. The language of the will is so construed.